# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO RAMIREZ, | Case No. 1:17-cv-00947-BAM (PC) |
| Plaintiff, | ORDER GRANTING DEFENDANT KITT'S MOTION FOR SUMMARY JUDGMENT |
| v. | (ECF No. 49) |
| KITT, | |
| Defendant. | |

**I.     Introduction**

Plaintiff Armando Ramirez ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's first amended complaint against Defendant Kitt ("Defendant") for deliberate indifference to serious medical needs in violation of the Eighth Amendment. All parties have consented to United States Magistrate Judge jurisdiction. (ECF Nos. 40, 43.)

On March 8, 2021, Defendant filed a motion for summary judgment on the grounds that the undisputed material facts and supporting evidence show that: he was never deliberately indifferent to Plaintiff's medical needs, nor negligent in the medical treatment he rendered to Plaintiff, and nothing Defendant did or did not do caused any injury to Plaintiff. (ECF No. 49.)[1]

---

[1] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988). (ECF No. 49-7.)

1

Fed. R. Civ. P. 56(c), *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied*, 574 U.S. 968 (2014).  (ECF No. 49.)  Following several extensions of time, Plaintiff filed an opposition to the motion for summary judgment on June 24, 2021, (ECF No. 57), and Defendant filed a reply on July 1, 2021, (ECF No. 58.)

After resolving a pending discovery dispute and directing Defendant to file supplemental responses to Plaintiff's Interrogatories Nos. 6 and 16, (ECF No. 62), the parties were directed to submit supplemental briefs limited to facts or arguments related to Defendant's supplemental responses.  Plaintiff filed a supplemental opposition on March 20, 2024, (ECF No. 63), and Defendant filed a supplemental reply on April 3, 2024, (ECF No. 64).  Defendant's motion for summary judgment is now fully briefed.[2]  Local Rule 230(l).

For the reasons set forth below, the Defendant's motion for summary judgment will be granted.

## II. Legal Standard

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that may affect the outcome of the case under the applicable law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party."  *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof.  *See Soremekun v. Thrifty*

---

[2] Defendant's motion for summary judgment, (ECF No. 49), and Plaintiff's motions to compel, (ECF Nos. 44, 47), were dropped inadvertently by the Court's CM/ECF reporting/calendaring system resulting in the prolonged delay in resolution.

1  *Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the movant will have the burden of proof at
2  trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for
3  the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323).  In contrast, if the nonmoving party will
4  have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an
5  absence of evidence to support the nonmoving party's case." *Id.*

6  If the movant satisfies its initial burden, the nonmoving party must go beyond the
7  allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative
8  evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929
9  (9th Cir. 2009) (emphasis omitted).  "[B]ald assertions or a mere scintilla of evidence" will not
10 suffice in this regard.  *Id.* at 929; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475
11 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its
12 opponent must do more than simply show that there is some metaphysical doubt as to the material
13 facts.") (citation omitted).  "Where the record taken as a whole could not lead a rational trier of
14 fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S.
15 at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

16 In resolving a summary judgment motion, "the court does not make credibility
17 determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984.  Instead, "[t]he
18 evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn
19 in [its] favor." *Anderson*, 477 U.S. at 255.  Inferences, however, are not drawn out of the air; the
20 nonmoving party must produce a factual predicate from which the inference may reasonably be
21 drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),
22 *aff'd*, 810 F.2d 898 (9th Cir. 1987).

23 In arriving at these findings and recommendations, the Court carefully reviewed and
24 considered all arguments, points and authorities, declarations, exhibits, statements of undisputed
25 facts and responses thereto, if any, objections, and other papers filed by the parties.  Omission of
26 reference to an argument, document, paper, or objection is not to be construed to the effect that
27 this Court did not consider the argument, document, paper, or objection. This Court thoroughly
28 reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III. Discussion

#### A. Plaintiff's Objections to Expert Witness

In his opposition to the motion for summary judgment, Plaintiff objects to the use of Defendant's expert witness, Dr. Kaplan, because he was not disclosed to Plaintiff until the motion for summary judgment was filed. (ECF No. 57, pp. 2–4.) Plaintiff acknowledges that the Court did not order the disclosure of expert witnesses pursuant to Federal Rule of Civil Procedure 26. (*Id.* at 2.) Nevertheless, Plaintiff argues that because Dr. Kaplan was not disclosed, Plaintiff was prevented from obtaining discovery from Dr. Kaplan in the form of requests for production of "previous publications, expert reports, transcripts of previous expert testimony or dispositions." (*Id.* at 3.) Dr. Kaplan's declaration as to his credentials and employment history are not a substitute for an expert witness report pursuant to Rule 26(a)(2). Plaintiff was also prevented from obtaining "evidence" in preparation for the summary judgment motion because Defendant objected to certain of Plaintiff's interrogatories on the ground that they called for legal conclusions or expert opinion testimony. (*Id.*)

Defendant argues in reply that Dr. Kaplan's testimony should not be precluded because the time for disclosure of expert opinions has not occurred in this case, as no trial date has been set. (ECF No. 58, pp. 6–7.)

Plaintiff's objections to Dr. Kaplan's testimony are overruled. The Court did not order disclosure of expert witnesses pursuant to Federal Rule of Civil Procedure 26, or in the Discovery and Scheduling Order. Thus, Defendant was not required to disclose Dr. Kaplan as an expert witness prior to filing the motion for summary judgment. To the extent Plaintiff argues that he was prevented from obtaining "evidence" in preparation for the summary judgment due to Defendant's objections to certain of Plaintiff's interrogatories, that discovery dispute was resolved in Plaintiff's favor. As Defendant was directed to file supplemental responses to Plaintiff's interrogatories that properly requested expert opinions from Defendant, and Plaintiff was then permitted to file a supplemental opposition to Defendant's motion for summary judgment, the Court finds that there was no prejudice to Plaintiff resulting from Defendant's failure to disclose Dr. Kaplan as an expert prior to filing the motion for summary judgment.

**B.     Undisputed Material Facts ("UMF")**[3]

**Issue No. 1:** Whether Defendant was deliberately indifferent to Plaintiff's medical needs.

1. Armando Ramirez ("Plaintiff") is a California State Prison inmate and was incarcerated at the time of the events giving rise to this lawsuit. (ECF No. 19 ("First Am. Compl.").)
2. Plaintiff first consulted with Dr. Kitt ("Defendant") via TeleMedicine on March 12, 2015. (ECF No. 49-5 ("Lucas Decl."), Ex. C, p. 4 and Ex. D, pp. 78–79; ECF No. 49-3 ("Kaplan Decl.") ¶ 5(a) and Ex. B, pp. 47, 121–22.)
3. According to Defendant's consultation note, Plaintiff reported a history of a perforated right ear drum since May 2014 for which he had received treatment with oral and topical antibiotics without any significant improvement. (Lucas Decl., Ex. C, p. 4 and Ex. D, pp. 78–79; Kaplan Decl. ¶ 5(a) and Ex. B, pp. 47, 121–22.)
4. Plaintiff also reported having some drainage and hearing loss in his right ear. (Lucas Decl., Ex. C, p. 4 and Ex. D, pp. 78–79; Kaplan Decl. ¶ 5(a), Ex. B (ECF No. 49-3, p. 47; ECF No. 49-4, pp. 41–42).)
5. Defendant documented that, due to a technical difficulty with the TeleMedicine equipment, he was unable to perform an ear examination during the visit. (Lucas Decl., Ex. C, p. 4 and Ex. D, pp. 78–79; Kaplan Decl. ¶ 5(a), Ex. B (ECF No. 49-3, p. 47; ECF No. 49-4, pp. 41–42).)
6. Defendant recommended that Plaintiff undergo a CT scan of his temporal bones to evaluate for any anatomical abnormalities or mastoiditis (an infection that affects the mastoid bone located behind the ear) and return for follow up. (Lucas Decl., Ex. C, p. 4 and Ex. D, pp. 78–79; Kaplan Decl. ¶ 5(a), Ex. B (ECF No. 49-3, p. 47; ECF No. 49-4, pp. 41–42).)
7. On April 13, 2015, Plaintiff underwent a CT scan of the temporal bones, which was interpreted as showing no evidence of mastoiditis or any other middle or inner ear

---

[3] *See* Separate Statement of Undisputed Facts in Support of Motion for Summary Judgment by Defendant Victor V. Kitt, M.D., (ECF No. 49-2); Opposing Party's Statement of Genuine Issues in Dispute in Opposition to Defendant's Separate Statement of Undisputed Facts in Support of Motion for Summary Judgment by Defendant Victor V. Kitt, M.D., (ECF No. 57, pp. 1–43). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

abnormalities.  (Lucas Decl., Ex. C, p. 5; Kaplan Decl. ¶ 5(b), Ex. B (ECF No. 49-3, p. 48).)

8. Plaintiff underwent an audiology test at the prison on April 15, 2015 which demonstrated that he had mild conductive hearing loss on the right.  (Lucas Decl., Ex. C, p. 6; Kaplan Decl. ¶ 5(c), Ex. B (ECF No. 49-3, p. 49).)

9. Plaintiff underwent another audiology test at the prison on December 1, 2015, which again demonstrated that he had mild conductive hearing loss on the right.  (Lucas Decl., Ex. C, p. 11; Kaplan Decl. ¶ 5(d), Ex. B (ECF No. 49-3, p. 54).)

10. Plaintiff next consulted with Defendant on January 12, 2016 at Defendant's clinic in Bakersfield, California.  (Lucas Decl., Ex. C, pp. 13–18; Kaplan Decl. ¶ 5(e), Ex. B (ECF No. 49-3, pp. 56–61).)

11. On exam, Defendant documented that the patient had what appeared to be a 50% ear drum perforation on the right.  (Lucas Decl., Ex. C, pp. 13–16; Kaplan Decl. ¶ 5(e) and Ex. B, pp. 56–59.)

12. Defendant also documented that he reviewed the CT scan of the patient's temporal bones and his audiology test results.  (Lucas Decl., Ex. C, pp. 13–16; Kaplan Decl. ¶ 5(e), Ex. B (ECF No. 49-3, pp. 56–59).)

13. Defendant's impression was that Plaintiff had a right eardrum perforation with mild conductive hearing loss.  (Lucas Decl., Ex. C, pp. 13–16; Kaplan Decl. ¶ 5(e), Ex. B (ECF No. 49-3, pp. 56–59).)

14. Defendant recommended a tympanoplasty (the surgical operation performed for the reconstruction of the eardrum), and Plaintiff stated he would like to proceed with surgical repair.  (Lucas Decl., Ex. C, pp. 13–16; Kaplan Decl. ¶ 5(e), Ex. B (ECF No. 49-3, pp. 56–59).)

15. On February 12, 2016, the medical records show that Plaintiff arrived at Mercy Hospital at approximately 5:50 a.m., accompanied by two Correctional Officers.  (Lucas Decl., Ex. D, pp. 80–81; Kaplan Decl. ¶ 5(f), Ex. B (ECF No. 49-4, pp. 43–44).)

///

16. At 6:50 a.m., Plaintiff signed a three-page "Consent to Surgery or Special Procedure" for the performance of a right tympanoplasty under microscope by Defendant. Paragraph 11 of that document, titled "Acknowledgement and Signature," states that, "By signing this form, you are indicating that you have read and understand the information in this form; your doctor has discussed the procedure with you and explained the risks and benefits and any foreseeable problems; your doctor has discussed alternative methods of treatment available, their risks and benefits, and what would happen if you did not have the procedure; you had a chance to ask your doctor any questions about the procedure; you authorize and consent to the performance of the procedure and the anesthesia." (Lucas Decl., Ex. d, pp. 82–84; Kaplan Decl. ¶ 5(f), Ex. B (ECF No. 49-4, pp. 45–47).)

17. At approximately 7:00 a.m., Defendant completed a "Pre & Post-OP Progress Record" in which he documented that the potential risks, benefits and alternatives to the tympanoplasty surgery were explained to the patient and accepted and, on examination, there were no changes from the prior History & Physical. (Lucas Decl., Ex. D, p. 85; Kaplan Decl. ¶ 5(f), Ex. B (ECF No. 49-4, p. 48).)

18. At approximately 8:27 a.m. Defendant performed a right tympanoplasty under microscope on Plaintiff. (Lucas Decl., Ex. D, pp. 89–91; Kaplan Decl. ¶ 5(g) and Ex. B, pp. 52–54.)

19. The Operation Report states that an "initial ear exam confirmed that [the patient had] a subtotal eardrum perforation with no active drainage." (Lucas Decl., Ex. D, pp. 90–91; Kaplan Decl. ¶ 5(g), Ex. B (ECF No. 49-4, pp. 52–53).)

20. The Operation Report further states that "there was only a small edge of the remnants of the eardrum on the periphery" and "the pre-harvested facial graft was used to repair the eardrum as a medial grafting technique." (Lucas Decl., Ex. D, pp. 90–91; Kaplan Decl. ¶ 5(g), Ex. B (ECF No. 49-4, pp. 53–54).)

21. Defendant documented that the surgery was completed without complication. (Lucas Decl., Ex. D, pp. 90–91; Kaplan Decl. ¶ 5(g), Ex. B (ECF No. 49-4, pp. 53–54).)

22. At about 11:00 a.m. on February 12, 2016, Plaintiff was discharged back to the prison. (Lucas Decl., Ex. D, p. 93; Kaplan Decl. ¶ 5(h), Ex. B (ECF No. 49-4, pp. 56).)

7

23. Defendant gave instructions to the prison that Plaintiff could resume his diet as tolerated, and he prescribed Norco 10/325 mg every four hours as needed for severe pain, and Tylenol 650 mg 1–2 tabs every four hours for mild to moderate pain.  (Lucas Decl., Ex. D, pp. 86, 94; Kaplan Decl. ¶ 5(h), Ex. B (ECF No. 49-4, pp. 49, 57).)

24. Defendant further instructed that Plaintiff was to remove the outside cup dressing on February 15, 2016, and keep the ear canal gauze packing until February 19, 2016, as earlier removal could cause ear canal narrowing.  (Lucas Decl., Ex. D, pp. 86, 94; Kaplan Decl. ¶ 5(h), Ex. B (ECF No. 49-4, pp. 49, 57).)

25. The prison was to arrange a post-operative office visit with Defendant in a few weeks, or sooner, as needed.  (Lucas Decl., Ex. D, pp. 86, 94; Kaplan Decl. ¶ 5(h), Ex. B (ECF No. 49-4, pp. 49, 57).)

26. Defendant saw Plaintiff again via TeleMedicine on March 10, 2016 for post-operative follow up.  (Lucas Decl., Ex. C, p. 22 and Ex. D, pp. 95–96; Kaplan Decl. ¶ 5(i), Ex. B (ECF No. 49-3, p. 65; ECF No. 49-4, pp. 58–59).)

27. On that date, Defendant documented that Plaintiff's post-operative course was uneventful. (Lucas Decl., Ex. C, p. 22 and Ex. D, pp. 95–96; Kaplan Decl. ¶ 5(i), Ex. B (ECF No. 49-3, p. 65; ECF No. 49-4, pp. 58–59).)

28. On examination, Defendant documented the right ear canal was clean and the grafted eardrum was in a good healing process with no active discharge.  (Lucas Decl., Ex. C, p. 22 and Ex. D, pp. 95–96; Kaplan Decl. ¶ 5(i), Ex. B (ECF No. 49-3, p. 65; ECF No. 49-4, pp. 58–59).)

29. Defendant instructed Plaintiff to resume his normal activity and documented that he would be glad to see Plaintiff again in the future if there were any problems.  (Lucas Decl., Ex. C, p. 22, Ex. D, pp. 95–96, and Ex. F, p. 114; Kaplan Decl. ¶ 5(i), Ex. B (ECF No. 49-3, p. 65; ECF No. 49-4, pp. 58–59, 77).)

30. Otherwise, Defendant recommended an audiogram be performed in about six months to evaluate hearing activity.  (Lucas Decl., Ex. C, p. 22 and Ex. D, pp. 95–96; Kaplan Decl. ¶ 5(i), Ex. B (ECF No. 49-3, p. 65; ECF No. 49-4, pp. 58–59).)

31. In a separate note from a nurse that the prison dated March 10, 2016, it was documented that Plaintiff had no pain complaints. The nurse also documented that Plaintiff's right ear was clear, with no drainage, no redness, and no bleeding. The nurse further documented that Plaintiff's tympanic membrane was intact. (Lucas Decl., Ex. C, p. 23; Kaplan Decl. ¶ 5(k), Ex. B (ECF No. 49-3, p. 66).)

32. On December 5, 2016, an audiology evaluation was performed on Plaintiff at the prison which demonstrated mild conductive hearing loss in the right ear and a tympanic membrane perforation visible in the right ear. (Lucas Decl., Ex. C, pp. 26–27; Kaplan Decl. ¶ 5(l), Ex. B (ECF No. 49-3, pp. 69–70).)

33. On December 16, 2016, Plaintiff was sent to Riverside University Health Care System where he saw Erin Ostby, M.D. Dr. Ostby's consultation note states that while Plaintiff reported his ear does not drain, he denies dizziness, denies tinnitus, denies pain. Plaintiff's only complaint was hearing loss. (Lucas Decl., Ex. C, pp. 30–34 and Ex. E, pp. 99–101; Kaplan Decl. ¶ 5(m), Ex. B (ECF No. 49-3, p. 68; ECF No. 49-4, pp. 62–64).)

34. On exam, Dr. Ostby noted that the previous graft appeared to have fallen into the middle ear. (Lucas Decl., Ex. C, pp. 30–34 and Ex. E, pp. 99–101; Kaplan Decl. ¶ 5(m), Ex. B (ECF No. 49-3, pp. 73–74; ECF No. 49-4, pp. 62–64).)

35. Dr. Ostby recommended a revision tympanoplasty which was eventually performed on January 3, 2017 by Helen Xu, M.D. (Lucas Decl., Ex. C, pp. 30–34, 41–42 and Ex. E, pp. 99–101, 102–03; Kaplan Decl. ¶ 5(m), Ex. B (ECF No. 49-3, pp. 73–74; ECF No. 49-4, pp. 4–5, 62–64, 65–66).)

36. At his last documented follow-up visit at Riverside University Health Care System on October 6, 2017, Plaintiff's graft tympanoplasty had fully healed and no conductive hearing loss was noted on the audiogram. (Lucas Decl., Ex. C, pp. 71–73 and Ex. E, pp. 105–08; Kaplan Decl. ¶ 5(n), Ex. B (ECF No. 49-4, pp. 34–36, 68–71).)

37. It is further documented in the records from Riverside University Health Care System that Plaintiff also denied subjective hearing loss. (Lucas Decl., Ex. E, pp. 105–08; Kaplan Decl. ¶ 5(n), Ex. B (ECF No. 49-4, pp. 68–71).)

9

**Issue No. 2:**  Whether Defendant was negligent in the medical treatment he rendered to Plaintiff.

    38. Michael Kaplan, M.D. is qualified to render an opinion as to the standard of care applicable to Otolaryngologists.  (Kaplan Decl. ¶¶ 1–5 and Ex. A.)

    39. The care and treatment provided by Defendant to Plaintiff at all times met the applicable standard of care.  (*Id.* ¶¶ 6–7.)

**See also Undisputed Material Facts as to Issue No. 1.**

**Issue No. 3:**  Whether Defendant's actions or inactions caused any injury to Plaintiff.

    40. Michael Kaplan, M.D.[4] is qualified to render an opinion as to causation.  (*Id.* ¶¶ 1–5 and Ex. A.)

    41. There is nothing that Defendant did or did not do that caused Plaintiff to suffer any injuries in this case.  (*Id.* ¶¶ 6–7.)

**See also Undisputed Material Facts as to Issue No. 1.**

    **C.**    **Parties' Positions**

Defendant Kitt contends that the undisputed facts establish that Defendant was never deliberate indifferent to Plaintiff's medical needs.  Defendant provided Plaintiff with appropriate care and treatment as it related to Plaintiff's right eardrum perforation that comports with the applicable standard of care.  Plaintiff has no admissible evidence to support his claim that Defendant was deliberately indifferent because he did not surgically close a hole in Plaintiff's right eardrum and fully restore Plaintiff's hearing before discharging Plaintiff as a patient, thereby allegedly suffering permanent hearing loss, pain, ear infections, and the need to undergo a second surgery to repair the eardrum perforation.  According to Michael Kaplan, M.D., a qualified expert in the field of Otolaryngologist with a specialty in Head and Neck surgery, Defendant complied with the applicable standard of care at all times in connection with his treatment of Plaintiff.  There is also no evidence that Defendant acted with any subjective intent to harm Plaintiff or that there was a purposeful failure by Defendant to respond to Plaintiff's medical needs.  There is also no evidence demonstrating that Defendant caused any injury or serious deprivation to Plaintiff's

---

[4] Defendant's Separate Statement of Undisputed Fact No. 40 refers to "Keith Klein, M.D."  (ECF No. 49-2, p. 9.)  This appears to be a clerical error.

1  medical condition, as a graft failure is a known and recognized complication of a tympanoplasty
2  that can and does occur in the absence of any negligence, and Plaintiff did not suffer an increase
3  in hearing loss as a result of Defendant's surgery.  Finally, Plaintiff's disagreement with
4  Defendant's decision to discharge Plaintiff from Defendant's care is a difference of opinion
5  between a physician and a prisoner concerning medical treatment and does not amount to
6  deliberate indifference.
7  In opposition, Plaintiff argues that despite Defendant's "guarantee" and "promise" to do
8  so, there is compelling material evidence that Defendant failed or refused to seal/close Plaintiff's
9  right eardrum perforation during the corrective surgery and restore Plaintiff's hearing.  Upon
10 discovering that the perforation was not sealed or closed during a Telemed examination,
11 Defendant discharged Plaintiff from his medical care despite Plaintiff's complaints of pain,
12 hearing loss, and discharge of fluids from his ear, rather than scheduling a physical examination
13 in his office.  The perforation was still visible by the attending nurse, but medical records were
14 tampered and fabricated to not document said complaints and perforation.  After suffering
15 numerous ear infections and a revision surgery by Dr. Xu, the perforation was finally closed.
16 However, Plaintiff suffered severe hearing loss.  Plaintiff did not return to Defendant's care
17 because Plaintiff has no choice as to who he sees for specialty services, but he also did not want
18 to be seen or examined by Defendant after Defendant refused and failed to seal the perforation in
19 the first surgery.  Dr. Kaplan's opinion evidence admits that when the graft placed by Defendant
20 failed, Plaintiff's hearing was "likely dampened," showing deliberate indifference by Defendant.
21 The difference of opinion between Plaintiff regarding Defendant's medical decisions amounts to
22 deliberate indifference because Defendant chose a course of treatment that was medically
23 unacceptable under the circumstances, and in conscious disregard of an excessive risk to
24 Plaintiff's health, resulting in further significant injury and wanton infliction of pain to Plaintiff.
25 In reply, Defendant asserts that Plaintiff failed to meet his burden to present admissible
26 evidence showing Defendant was deliberately indifferent in response to Plaintiff's medical needs.
27 The undisputed facts and supporting evidence demonstrate that Defendant in no way purposefully
28 ignored or failed to respond to Plaintiff's medical needs.  Even if Plaintiff's argument that

Defendant failed to close the hole in Plaintiff's ear and restore his hearing is taken as true, it is insufficient to demonstrate the kind of culpability required to set forth a claim for deliberate indifference against Defendant, as opposed to a claim for medical negligence. Plaintiff's failure to provide expert opinion testimony regarding the issues of standard of care and causation is fatal to his claim for deliberate indifference. Plaintiff incorrectly attempts to substitute his own lay opinion for required expert medical opinions, or attributes statements on causation to other treating health care providers, which is inadmissible hearsay.

Pursuant to the Court's January 23, 2024 order granting in part Plaintiff's motion to compel, Plaintiff was permitted to file a supplemental opposition to the motion for summary judgment, limited only to those facts or arguments relating to Defendant's supplemental responses to Plaintiff's Interrogatories Nos. 6 and 16. (ECF No. 62.) Plaintiff argued that Defendant's response to Interrogatory No. 6, regarding possible symptoms of a perforated eardrum, calls into question the standard of care. Further, the fact that Plaintiff' required a subsequent tympanoplasty within a year of Defendant's surgery rebuts the presumption that Defendant's operation was within the standard of care. Further, Defendant's response to Interrogatory No. 16, regarding Defendant's belief that the February 12, 2016 surgery was within the standard of care, and that graft failure is a known and recognized complication of tympanoplasty that can and does occur in the complete absence of negligence, is merely Defendant's "belief" not supported by anything tangible, and creates a genuine issue of material fact. Plaintiff further asserts that on at least six separate instances or occasions, Defendant has been accused of the same or similar negligence, and cites to six different federal lawsuits. (ECF No. 63, p. 4.)

Defendant contends that Plaintiff's supplemental opposition is procedurally defective because it does not attach Defendant's supplemental responses to Interrogatories Nos. 6 and 16, and that prior lawsuits filed against Defendant are irrelevant and inadmissible to demonstrate that Defendant acted with deliberate indifference. Plaintiff's supplemental opposition also fails to create a triable issue of fact through his discussions of Defendant's supplemental responses.

///

**D.     Analysis**

Based on the undisputed evidence in the record, Plaintiff has failed to show that Defendant was deliberately indifferent to Plaintiff's medical needs when Defendant performed the tympanoplasty to close the perforation in Plaintiff's right eardrum or when Defendant discharged Plaintiff from his care following the surgery.

The undisputed facts show that Defendant was not deliberately indifferent in the care of and surgery performed on Plaintiff. Defendant recommended a tympanoplasty to reconstruct Plaintiff's right eardrum and Plaintiff stated he would like to proceed with the surgical repair. UMF 14. Plaintiff consented to the tympanoplasty on February 12, 2016. UMF 15, 16. According to the evidence in the record, Defendant documented that the potential risks, benefits and alternatives to the surgery were explained to Plaintiff. UMF 17. The surgery was performed and Defendant documented that it was completed without complication. UMF 18, 21. Defendant saw Plaintiff for a post-operative follow up via TeleMedicine on March 10, 2016, when Defendant documented that Plaintiff's post-operative course was uneventful. UMF 26, 27. Defendant documented that on examination, the right ear canal was clean and the grafted eardrum was in a good healing condition with no active discharge. UMF 28. Defendant instructed Plaintiff to resume his normal activity, documented that he would be glad to see Plaintiff again in the future if there were any problems, and recommended an audiogram be performed in about six months to evaluate hearing activity. UMF 29, 30. A separate note from RN Trevino dated March 10, 2016 also documented that Plaintiff had no pain complaints, Plaintiff's right ear was clear, with no drainage, no redness, and no bleeding, and that Plaintiff's tympanic membrane was intact. UMF 31. Defendant's expert, Dr. Michael Kaplan, is qualified to render an opinion as to the standard of care applicable to Otolaryngologists. UMF 38. Dr. Kaplan opines that the care and treatment provided by Defendant to Plaintiff at all times met the applicable standard of care. UMF 39. Dr. Kaplan is further qualified to render an opinion as to causation, and opines that there is nothing that Defendant did or did not do that caused Plaintiff to suffer any injuries in this case. UMF 40, 41.

Plaintiff argues throughout his opposition and supplemental opposition that he repeatedly

complained of pain and ear infections following Defendant's surgery, but Defendant did not respond to his complaints.  Plaintiff further contends that during the March 10, 2016 post-operative follow up, the video portion of the TeleMedicine equipment malfunctioned, preventing Defendant from examining Plaintiff's eardrum himself.  Rather, RN Trevino examined Plaintiff's eardrum and verbally relayed her observations to Defendant.  Plaintiff alleges that Defendant and RN Trevino both failed to include these details in their medical notes from that appointment.  While Plaintiff contends that this is sufficient to demonstrate a material dispute of fact, Plaintiff has failed to provide any evidence, other than statements made during his own deposition, to support his allegations.  *See Rivera v. AMTRAK*, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment."); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").  The fact that Plaintiff relies upon his deposition testimony in addition to the allegations in his oppositions to Defendant's motion for summary judgment, does not convert these statements from self-serving affidavits to factual data or supporting evidence.

Even taking as true Plaintiff's assertions that Defendant and RN Trevino fabricated his medical records or otherwise omitted his complaints of pain during the March 10, 2016 appointment, these actions appear to rise only to the level of negligence or medical malpractice, which does not support a cause of action for deliberate indifference.  *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Furthermore, other evidence in the record fails to support Plaintiff's version of events.  During Plaintiff's March 12, 2015 consultation with Defendant, there was a similar malfunction in the video portion of the TeleMedicine equipment, which was documented in the visit note.  UMF 5; (ECF No. 49-5, p. 4).  Thus, if there were a video malfunction during the March 10, 2016 appointment, a note could have been included by RN Trevino—the fact that one was not included

does not itself prove Plaintiff's argument that the records were fabricated.  Further, as to Plaintiff's claims that he suffered pain and repeated ear infections following Defendant's surgery and post-operative care, during the December 16, 2016 consultation at Riverside University Health Care System, Dr. Ostby documented that while Plaintiff reported "he has had several ear infections in the past," Plaintiff had "[n]o infections in the past several years," (ECF No. 49-5, p. 99), which includes the time following Defendant's surgery.  Dr. Ostby further noted that Plaintiff continued to have hearing loss following his February 12, 2016 surgery with Defendant, but while Plaintiff reported that "his ear does not drain, he denies dizziness, denies tinnitus, denies pain. His only complaint is the hearing loss." (*Id.*)  These records, which Plaintiff does not contend were fabricated, thus contradict Plaintiff's claims regarding continuing pain and ear infections in his right ear following Defendant's surgery.

Defendant presented the expert opinion of Dr. Kaplan, who opines that Defendant's care and treatment of Plaintiff at all times met the applicable standard of care and that there is nothing that Defendant did not do that caused Plaintiff to suffer any injuries in this case.  UMF 39, 41. Dr. Kaplan states that graft failure is a "known and recognized complication of a tympanoplasty that can and does occur in the complete absence of any negligence" and "the surgical technique utilized by Dr. Kitt was competent and consistent with the standard of care." (ECF No. 49-3, p. 7.)  In opposition, Plaintiff offers only his own lay opinions to support his assertion that Defendant's care and treatment constituted deliberate indifference to Plaintiff's serious medical needs.  While Plaintiff further contends that the fact that Defendant's surgery failed to fully repair the perforation to his right eardrum is itself evidence of Defendant's deliberate indifference, Plaintiff has not shown that he qualifies as an expert witness in order to be able to opine on the appropriateness of the surgical technique used, the likelihood of a graft failure during a routine tympanoplasty, or the appropriateness of the post-operative care he received.  *See* Fed. R. Evd. 702. As Plaintiff is a lay witness, the only admissible evidence he can provide on his own is limited to opinions that are rationally based on his perception; that are helpful to clearly understanding his testimony or to determining a fact in issue; and are not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 such as medical opinions.

*See* Fed. R. Evd. 701.  A mere difference of opinion between Plaintiff and his doctor concerning the appropriateness of his medical care does not amount to deliberate indifference.  *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)).  Thus, based on the undisputed evidence in the record, Defendant's actions were consistent with the standard of care for this procedure.

## IV. Conclusion and Order

For the reasons explained above, the Court finds that Defendant Kitt is entitled to summary judgment on Plaintiff's claims that Defendant Ridge was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Defendant Kitt's motion for summary judgment, (ECF No. 49), is GRANTED;
2. Judgment shall be entered in favor of Defendant Kitt and against Plaintiff; and
3. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: __August 21, 2024__        /s/ *Barbara A. McAuliffe*
                                            UNITED STATES MAGISTRATE JUDGE